**Caroline HAMILTON and James Jacobs, Plaintiffs,**

v.

**Charles E. ALLEN, et al., Defendant.**

**No. Civ.A.05–110.**

United States District Court, E.D. Pennsylvania.

Oct. 14, 2005.

### Memorandum and Order

PRATTER, District Judge.

Defendants in this case, a group of investment advisors to various mutual funds, along with several individuals who are alleged to be directors and/or affiliates of the funds,[1] move to dismiss Plaintiffs' putative class action claim. Federal jurisdiction is grounded upon federal questions arising from the Investment Companies Act, 15 U.S.C. §§ 80A *et seq.* For the reasons discussed below, the motion is granted.

### FACTS AND PROCEDURAL HISTORY

The named plaintiffs in this case are Caroline Hamilton and James Jacobs, who are each investors in mutual funds managed by the Defendants.[2] The group of defendants include the following "registered investment advisors:" (1) Gartmore Mutual Funds, Inc.,[3] (2) Gartmore Mutual Fund Capital Trust, (3) Gartmore Separate Accounts, LLC (4) Gartmore Global Partners, (5) NorthPointe Capital LLC, and (6) Fund Asset Management, LP (collectively, the "Fund Defendants"). Defendants Charles E. Allen, Paula H.J. Cholmondeley, C. Brent DeVoe, Robert M. Duncan, Barbara L. Hennigar, Thomas J. Kerr, IV, Douglas F. Kridler, David C. Wetmore, Paul J. Hondros, Arden L. Shisler, Gerald J. Holland, and Eric E. Miller (the "Individual Defendants") are each members of the Board of Directors for the Fund Defendants. Plaintiffs also name "John Does 1–100" as defendants because they were "active participants with the

---

1. Gartmore Mutual Funds, Inc. is alleged to be the "ultimate parent" of Gartmore Mutual Fund Capital Trust, Gartmore Separate Accounts, LLC and Gartmore Global Partners. *Complaint* at ¶ 11. Gartmore Mutual Fund Capital Trust, NorthPointe Capital LLC, and Gartmore Global Partners, as well as Fund Asset Management, LP, are alleged to be registered investment advisors who have responsibility of the day-to-day management of the Gartmore Family of Funds. *Complaint* at ¶ 13. Additionally, Fund Asset Management asserts that it is a subsidiary of Merrill Lynch Investment Managers, L.P. serving as a "subadviser" to five of approximately 38 of the mutual funds at issue in this case. *Memorandum in Support of FAM Motion to Dismiss* at 2. As such, FAM asserts that it is only responsible for "making investment decisions for those funds and, in connection with such investment decisions, placing purchase and sell orders for securities held by those funds." *Id.*

2. According to the Complaint, Ms. Hamilton is a resident of Mobile County, Alabama and owned "one of the Funds" at all times relevant to the Complaint. *Complaint* at ¶ 10. Mr. Jacobs resides in Calhoun County, Texas and at all relevant times also owned "one of the Funds." *Id.*

3. Gartmore Mutual Funds, Inc. is alleged to market, sponsor and provide investment advisory, distribution and administrative services to the "Gartmore Family of Funds," which is alleged to consist of approximately 38 funds. *Complaint* at ¶ 11. Each of the registered investment advisor defendants is allegedly responsible for the day-to-day management of the Gartmore Family of Funds, 32 of which, according to Plaintiffs, have the "stated objective of owning equity securities."

above-named Defendants" in "widespread unlawful conduct."

Plaintiffs filed the present claim "on behalf of themselves and all others similarly situated," and seek certification as a class "of all persons owning [shares in] one of the Funds at any time during the class period[4] and who were damaged by the conduct alleged in the Complaint." Plaintiffs' allege that the Fund Defendants, as owners of investment securities, were eligible to participate as plaintiffs in hundreds of securities class action cases but failed to do so, thereby causing financial losses to all investors holding an interest in the Funds.

Plaintiffs filed the Complaint on January 10, 2005, alleging (1) breach of fiduciary duty for failure to submit proof of claim forms or to otherwise participate in settled securities class action cases; (2) negligence for failure to participate in settled securities class action cases; (3) violation of Section 36(a) of the Investment Company Act (breach of statutory fiduciary duty imposed by statute) by failing to submit proof of claim forms or to otherwise participate in settled securities class action cases; (4) violation of Section 36(b) of the Investment Company Act for failing to submit proof of claim forms or to otherwise participate in settled securities class actions and thereby recover money rightfully belonging to fund investors; and (5) violation of Section 47(b) of the Investment Company Act, rendering the advisory agreements with the Fund Defendants unenforceable because the funds were administered in violation of the Investment Com-

pany Act.[5] Plaintiffs demand that (1) the Court recognize, approve and certify the class as specified by Plaintiffs; (2) find in favor of the Class for compensatory and punitive damages, forfeiture of all commissions and fees paid by the Class, plus the costs of the present action, along with reasonable attorneys' fees; and (3) for other and further relief as the Court deems appropriate.

All of the Defendants have moved to dismiss the Complaint. The Gartmore Defendants, which include all of the Individual Defendants, Gartmore Mutual Funds, Inc., Gartmore Mutual Fund Capital Trust, NorthPointe Capital LLC, Gartmore Separate Accounts LLC, and Gartmore Global Partners, move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 23.1. The only remaining defendant, Fund Asset Management, L.P., joined in the Gartmore Defendants' motion, and submitted a separate memorandum to highlight what it describes as additional reasons that the Complaint fails to state a claim upon which relief can be granted.[6] Following submission of Plaintiffs' Opposition to the Motions, the Gartmore Defendants filed a reply to the Plaintiffs' Opposition, and Plaintiffs and the Gartmore Defendants each subsequently filed a Memorandum of Supplemental Authority.

## DISCUSSION

### A. Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure

---

4. Plaintiffs describe the class period as January 10, 2002 through January 10, 2005.

5. The fourth and fifth enumerated claims are asserted against the Fund Defendants only.

6. The Motion to Dismiss filed by FAM incorporates all of the arguments presented in the

Gartmore Defendants' Motion. In addition, FAM asserts that because Plaintiffs do not allege that FAM served as a subadviser to either of the funds in which Plaintiffs own shares, Plaintiffs do not have standing with respect to FAM. A more detailed discussion of Plaintiffs' standing is set forth below.

12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the non-moving plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). In considering a motion to dismiss a complaint, a court may consider "an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Steinhardt Group Inc. v. Citicorp,* 126 F.3d 144, 144 (3d Cir.1997).

## B. Derivative Nature of Claims

■ The determination of whether an action may be brought as a direct or derivative claim must be determined by the law of the state under which the fund is organized or incorporated. *Kamen v. Kemper Fin'l Svcs., Inc.,* 500 U.S. 90, 108, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). In *Kamen,* the Supreme Court stated that "where a gap in federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate *state* law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute." *Id.* Thus, to the extent that the Investment Company Act does not address whether Plaintiffs' claims may be brought derivatively or directly, the Court must look to the law of either Ohio or Massachusetts.[7]

Defendants assert that under either Ohio or Massachusetts law, Plaintiffs' claims for negligence and breach of fiduciary duty must be dismissed because the allegations are derivative in nature and may not be brought as a direct class action suit.[8] Defendants argue that because the claims relate only to the allegedly diminished value of the funds, there was no direct harm to Plaintiffs. Defendants further argue that to the extent that the claims could be brought as derivative claims, Plaintiffs must first satisfy the requirements of Federal Rule of Civil Procedure 23.1.[9] Plaintiffs disagree, arguing

---

**7.** The Gartmore Funds were issued by trusts organized under Ohio and Massachusetts law.

**8.** Plaintiffs also argue that an analysis of the application of Rule 23.1 is premature prior to a motion for class certification because "[o]nce individual standing has been established" the issue as to whether a plaintiff meets the requirements of Rule 23 is preserved for the class certification stage of a litigation. *Plaintiffs' Opposition to Motion to Dismiss* at 16. As is discussed *infra,* the Court concludes that the nature of these claims are derivative and, as such, Plaintiffs do not have individual standing to bring them. Thus, Plaintiffs' secondary argument is moot.

**9.** Federal Rule of Civil Procedure 23.1 states that in a derivative action, the complaint

"shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have." Rule 23.1 further requires that a complaint "shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." The Court notes that Rule 23.1 does not apply to claims brought pursuant to Section 36(b) of the In-

that (1) the injury they sustained was distinct from any injury suffered by the Funds; and that (2) Defendants bore and breached a fiduciary duty to Plaintiffs *personally,* thereby validating Plaintiffs' direct claim. *See Memorandum in Opposition to Motion to Dismiss* at 5.

Under either Ohio or Massachusetts law, claims for breach of the fiduciary duties of an officer or director of a corporation must be brought as a derivative suit by a shareholder on behalf of that corporation. *See Carlson v. Rabkin,* 152 Ohio App.3d 672, 789 N.E.2d 1122, 1127 (2003); *Jernberg v. Mann,* 358 F.3d 131, 135 (1st Cir.2004) (interpreting Massachusetts law); *Houser v. River Loft Associates Ltd. P'ship,* No. 98–4312B, 1999 WL 33594570 (Mass.Super.Ct. March 15, 1999). A plaintiff may assert a direct action against a corporation only if the plaintiff is injured in a way that is "separate and distinct from an injury to the corporation." *Carlson,* 789 N.E.2d at 1127. In making such a determination, a court must consider whether the pleadings state "an injury to the plaintiff upon an individual claim as distinguished from an injury that indirectly affects shareholders or affects them as a whole." *Id.; see also In re Eaton Vance Mutual Funds Fee Litigation,* 380 F.Supp.2d 222, 234 (S.D.N.Y.2005) (applying Massachusetts law to conclude that if alleged wrong affects plaintiffs merely as owners of corporate stock, harm is derivative). In ascertaining whether a plaintiff has suffered an injury that is distinct from the corporation, a court must look "not

only to the nature of the wrong, but to the relief that Plaintiff would be entitled if he were to prevail." *Seidel v. Lee,* No. 93–494, 1994 WL 913930 (D.Del. Oct.14, 1994).

Although there appear to be no cases in which Massachusetts or Ohio courts considered the applicability of these principles to claims filed by investors in mutual funds,[10] the Court of Appeals for the Third Circuit has addressed this issue in *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 733 (3d Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). In *Kauffman,* the court considered whether a shareholder of four mutual funds could assert a direct action, on behalf of a class, under the Investment Company Act. *Kauffman,* 434 F.2d at 732–733. The plaintiff alleged that the defendants, which included 65 mutual funds, 38 investment advisors and 37 directors, had engaged in a conspiracy "to adopt and stabilize fees for management services and investment services, to limit competition, to refrain from providing internal fund management, and to otherwise monopolize the management market," all in violation of antitrust and securities laws.[11] *Kauffman,* 434 F.2d at 731.

The defendants moved to dismiss the claims, alleging that such actions could only be brought on a derivative basis, and the plaintiff argued that because a mutual fund is a "novel corporate structure" and that "the unique relationship of the shareholder to the corporation" caused direct harm to a plaintiff whose redemptive value would be directly affected by the net value

vestment Company Act. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 542, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984).

**10.** There is, however, one case in which the federal district court for the District of Massachusetts, in addressing a derivative claim filed against an open-end investment company, concluded that Massachusetts courts would apply the requirement of the universal, pre-

suit demand to derivative actions that are brought on behalf of business trusts. *See ING Principal Protection Funds Derivative Litigation,* 369 F.Supp.2d 163, 171 (D.Mass.2005).

**11.** The plaintiff also asserted violations of the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, and the Sherman and Clayton Acts.

of the assets. *Kauffman*, 434 F.2d at 733. The court disagreed, noting that the argument disregarded the "fundamental tenet of corporation law which treats the corporate body as an entity ... separate and distinct from those who own shares of its stock." *Kauffman*, 434 F.2d at 733. The court further stated that "the worth of a share of appellee's stock is directly proportionate to the value of a mutual fund's net assets is insufficient to destroy" the separate identities of the fund and its shareholders. *Kauffman*, 434 F.2d at 733. The court then concluded that because the only harm alleged in the complaint was the negative effect upon the value of shares of corporate stock, the plaintiff's injury was derivative in nature. *Kauffman*, 434 F.2d at 733.

In this case, Plaintiffs argue that they have alleged a separate and distinct injury that supports their direct claim against Defendants because Defendants owed each individual plaintiff a fiduciary duty to act in their best interests. *Complaint* at ¶ 27. For support of the existence of such a duty, Plaintiffs rely primarily on *Strigliabotti v. Franklin Resources, Inc.*, No. 04–883, 2005 WL 645529, at *1 (N.D.Cal. March 7, 2005),[12] in which the plaintiffs, who were shareholders of a number of mutual funds, filed suit alleging that certain distribution agreements providing for the payment of fees to the funds' advisers allowed for the payment of excess fees, to the detriment of the funds and the investors. The plaintiffs sought either to rescind the advisory fee agreements or to recover the excess profits wrongfully retained by the defendants.

The allegations in the *Strigliabotti* complaint included a claim for breach of fidu-

---

**12.** In their Complaint, Plaintiffs also cite to *Huddleston v. Infertility Center of America, Inc.*, 31 Pa. D. & C. 4th 128, 178 (Pa. Ct. Comm. Pleas 1996), *aff'd in part, rev'd in part*, 700 A.2d 453 (Pa. Super Ct.1997) to support the existence of a fiduciary duty to individual investors in a mutual fund. In *Huddleston*, a surrogate mother brought a wrongful death action against a surrogacy clinic when the sperm-donor father murdered the child that had been born as a result of a contract between the surrogate mother and the surrogacy clinic. *Huddleston*, 700 A.2d at 455. Among other theories, the plaintiff argued that the clinic owed a duty of care to the plaintiff and the child to conduct psychological screening and/or perform a criminal investigation of prospective parents. *Id.* at 457.

In finding that such a duty did exist, the *Huddleston* court concluded that "a business operating for the sole purpose of organizing and supervising the very delicate process of creating a child, which reaps handsome profits from such endeavor, must be held accountable for the foreseeable risks of the surrogacy undertaking because a 'special relationship' exists between the surrogacy business and its client-participants, and, most especially, the child which the surrogacy undertaking creates." *Huddleston*, 700 A.2d at 461. The surrogacy clinic was therefore found to have had such a duty with respect to the plaintiff. Plaintiffs here argue that Defendants' fiduciary duty to them as individual investors arises from the special relationship the Defendants have, "[b]y virtue of their position as investment advisors to the Funds with complete control of Plaintiffs' investments." *Complaint* at ¶ 27. Thus, Plaintiffs argue that this case is analogous to *Huddleston* and such a duty must be found.

Aside from the obvious circumstance that *Huddleston* certainly did not espouse Ohio or Massachusetts law, this case is not sufficiently analogous to *Huddleston* to find that the Defendants owed a fiduciary duty to each individual plaintiff. The circumstances of this case starkly differ from those in *Huddleston*, where the special relationship upon which a duty of care was found was grounded upon an extremely personal and unique process which introduced physical and psychological risks to both the surrogate mother and child. To find the facts of *Huddleston* and the present case comparable would require the Court to consider investors in a mutual fund as innocent and helpless babes-in-the-woods victims who can exercise no control over their own assets or destiny, a proposition that is certainly not compelling and does not seem reasonable, prudent or practical.

ciary duty under California law. The plaintiffs specifically argued that they could assert individual direct claims for breach of fiduciary duty because each shareholder in the fund "had a distinct and separate amount directly and permanently subtracted from the value of his or her shares." *Strigliabotti*, 2005 WL 645529, at *7. In response, the defendants argued that the claims were derivative in nature, and because the plaintiffs had not complied with the requirements of Federal Rule of Civil Procedure 23.1, they must be dismissed. The *Strigliabotti* court, interpreting California law, agreed with the plaintiffs, concluding that "the financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis." *Striglabotti*, 2005 WL 645529, at *8.[13]

■ In this case, despite rulings by courts in California and Illinois, the Court finds that under the law of Ohio or Massachusetts, and in light of *Kauffman*, Plaintiffs' state law claims are derivative in nature. While the allegations, assuming that they are true, establish that the Funds suffered harm from a breach of fiduciary duty, there is insufficient basis to find that the law of either Ohio or Massachusetts imposes such a duty running to the individual investors of a mutual fund. The relief that Plaintiffs seek includes compensatory damages, which would presumably be calculated as the increased net asset value of the Funds had the settlement funds been received. Analytically then, Plaintiffs seek essentially to recover for the diminution of assets *to the Funds*. Plaintiffs may not bring direct claims against Defendants for a breach of a common law fiduciary duty, and the absence of such a duty eviscerates Plaintiffs' claim for negligence because no legal duty can be found.[14] For these reasons, the first two counts of the Complaint for negligence and

13. Plaintiffs also cited two cases in which courts interpreting Illinois law stated that individual plaintiffs could assert direct state law-based claims against a mutual fund for breach of fiduciary duty. *See Panfil v. Scudder Global Fund, Inc.*, No. 93–7340, 1993 WL 532537 (N.D.Ill.Dec. 20, 1993); *Mann v. Kemper Fin'l Co., Inc.*, 247 Ill.App.3d 966, 187 Ill.Dec. 726, 618 N.E.2d 317, 327 (1992). However, neither party has cited to a case in which a court held that either Ohio or Massachusetts impose such a fiduciary duty on investment companies or their directors.

14. In their submissions, Plaintiffs urge the Court to conclude that because of the unique structure and operation of mutual funds, Defendants owe a direct fiduciary duty to each of them individually and that, therefore, they have suffered a distinct injury separate and apart from any injury the Funds themselves might have suffered. *Plaintiffs' Memorandum in Opposition to Motion to Dismiss* at 5. At oral argument, Plaintiffs further argued that the Gartmore Defendants' literature espouses an "unwavering commitment to placing the interest of shareholders first," and, as such, set forth a promise to their investors that "they were going to act in [their] full best interest." *Oral Arg. Trans.* at 45:17–25. In response to the Court's question as to the precise location in their Complaint these allegations could be found, Plaintiffs' counsel responded "on page 8 ... the very first full paragraph." *Oral Arg. Trans.* at 46:6–8. The Court notes that this language was included in Plaintiffs' Memorandum in Opposition to the Motion to Dismiss, and is not found in the Complaint. Even if it were, the Court must conclude that no personal fiduciary duty is owed to individual investors. Plaintiffs have cited to no case in which an Ohio or Massachusetts court has drawn such a conclusion, and the ruling in *Kauffman* strongly suggests otherwise. Moreover, although they purport to have suffered a specific and individual injury which would confer individual standing, in their submission Plaintiffs acknowledge that their damages arise from a diminution of the Funds' assets. *See Plaintiffs' Memorandum in Opposition to Motion to Dismiss* at 6 ("[p]laintiffs and the putative class members are injured directly by Defendants' actions because had Defendants ensured that the Funds participated in the securities class ac-

breach of fiduciary duty against Defendants shall be dismissed.

## C. Section 36(a) of the Investment Company Act

Defendants next argue that the third count of the Complaint alleging a violation of Section 36(a) of the Investment Company Act should be dismissed because this section of the Act does not provide for a private cause of action. Plaintiffs disagree, arguing that a private right of action is implied.

The regulations promulgated to enforce the Investment Company Act "carefully control the relationship between investment advisers and investment companies" by, among other things, limiting the number of persons affiliated with the adviser who may serve on the investment company's board of directors and strictly regulating most transactions between investment companies and their advisers. *Lessler v. Little*, 857 F.2d 866, 870–71 (1st Cir.1988). Section 36(a) of the Act states that the "[c]ommission is authorized to bring an action in the proper district court of the United States ... alleging that a person serving or acting in one or more of the following capacities has engaged ... or is about to engage ... in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts...." 15 U.S.C. § 80a–35. Thus, there appears to be no explicitly stated private cause of action pursuant to Section 36(a) of the Investment Company Act.

Despite the lack of explicit authorization for a private right of action under Section 36(a), Plaintiffs argue that well-settled law instructs that an implied private right of action can, and should, be recognized. In support of this argument, Plaintiffs cite many cases in which several courts found such an implied right under various provisions of the Investment Company Act, including *In re ML–Lee Acquisition Fund II, L.P.*, 848 F.Supp. 527 (D.Del.1994) and *Bancroft Convertible Fund, Inc. v. Zico Investment Holdings, Inc.*, 825 F.2d 731 (3d Cir.1987).

In *ML–Lee*, the plaintiff-investors brought claims against several mutual funds and other defendants, alleging various claims, including a violation of Section 36(a) of the Investment Company Act. *ML–Lee*, 848 F.Supp. at 536. The defendants argued, among other things, that no private cause of action is authorized under Section 36(a) of the Investment Company Act. After noting the absence of an explicit right under Section 36(a), the *ML–Lee* court relied on a House of Representatives Committee Report associated with amendments to the Act that were effected in 1980 which stated that Congress intended to allow for an implied private right of action in "appropriate instances," such as "breaches of fiduciary duty involving personal misconduct." *ML–Lee*, 848 F.Supp. at 539. Similarly, the *Bancroft* court also considered the text of the same Committee Report and concluded that there is an implied private cause of action for enforcement of the Investment Company Act.[15]

---

tion settlements, the settlement funds *would have increased the total assets held by the Funds"*) (emphasis added).

**15.** In their Memorandum Opposing the Motion to Dismiss, Plaintiffs state that in *Bancroft* "the Third Circuit ... recognized an implied right of action under section 36(a) and other sections of the ICA." *Opposition*

*Memorandum* at 12. This statement is not accurate. The *Bancroft* court specifically held only that a private right of action could be implied from Section 12(d)(1)(A) of the Investment Company Act. While the *Bancroft* court noted in *dicta* the same House of Representatives Committee Report which was cited in *In re ML–Lee* and which stated that a

In the present case, Defendants argue that under current precedent no court could conclude that a private right of action is implied under Section 36(a). In support of this argument, Defendants rely on three recent opinions of the Supreme Court which suggest that federal courts have been instructed to narrow the parameter within which private rights of action may be implied. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 286, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (finding that unless statute provides indication of Congressional intent to create new personal rights, Section 1983 could not be used to enforce asserted right); *Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (finding no Congressional intent to establish "freestanding private right of action" to enforce regulations promulgated under Title VII of the Civil Rights Act of 1964); *Correctional Svcs. Corp. v. Malesko*, 534 U.S. 61, 67 n. 3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) ("we have retreated from our previous willingness to imply a cause of action where Congress has not provided one"). Defendants specifically note that in *Sandoval*, the Court instructed that in discerning whether a private right of action exists, a court must focus on the "text and structure" of a statute and consider whether the text includes "rights-creating language" to confer a private right of action. *Sandoval*, 532 U.S. at 288, 121 S.Ct. 1511.

Defendants further point out that in the only appellate court case since *Sandoval* to address the existence of a private cause of action under the Investment Company Act, the Court of Appeals for the Second Circuit held the because there was no explicit language providing for a private right of action in either of the statutory sections considered, Congress did not intend one. *See Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429 (2d Cir.2002) (addressing Sections 26(f) and 27(i) of the Investment Company Act). Moreover, the Court observes that there are also three very recent district court opinions in which no private right of action under Section 36(a) was found. First, in *Chamberlain v. Aberdeen Asset Mgt. Ltd.*, No. 02–5870, 2005 WL 195520, at *4 (E.D.N.Y. Jan.21, 2005), *vacated pursuant to settlement*, 2005 WL 1378757 (E.D.N.Y. Apr.12, 2005), the court concluded that "when *Olmsted* and *Sandoval* are applied to ICA Section 36(a), it is evident that the provision does not give rise to a private right of action." [16] Secondly, in *Mutchka v. Harris*, 373 F.Supp.2d 1021, 1027 (C.D.Cal.2005), a case nearly identical to the present case, the United States District Court for the Southern District of California dismissed all claims and specifically concluded that "Congress did not intend to create a private right of action in Section 36(a)." Finally, in *In re Eaton Vance Mutual Funds Fee Litigation*, 380 F.Supp.2d 222, 232 (S.D.N.Y.2005), the court concluded that "[t]he absence of rights-creating language, the existence of an alternative method of enforcement, and the existence of an explicit private right of action for another provision of the statute creates the strong

breach of fiduciary duty for personal misconduct might be properly brought pursuant to Section 36(a), the *Bancroft* court did not directly recognize an implied private right of action arising from Section 36(a).

**16.** In a supplemental memorandum, Plaintiffs argued that *Chamberlain* should not be considered because the opinion was subsequently vacated. However, the stated reason for vacating the decision was that such action was "a precondition to settlement, demanded by Plaintiffs." The *Chamberlain* court went on to note that the vacatur "does not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order." Thus, although the opinion was vacated, the court's reasoning remains analytically sound.

presumption that Congress did not intend to create private rights of action under ... § 36(a) [of the Investment Company Act]."

■ To determine whether a federal statute creates a private right of action, the Supreme Court has instructed that a court must ascertain whether Congress intended such a right. *Sandoval,* 532 U.S. at 286–87, 121 S.Ct. 1511. To discern congressional intent with respect to a statute, logically the court must first look to the text and structure of the statute. *Olmsted v. Pruco Life Ins. Co. of New Jersey,* 283 F.3d 429, 432 (2d Cir.2002). Ordinarily, where a right is not explicitly provided by a statute, no right is assumed to have been intended, and a plaintiff seeking to pursue such a right bears a heavy burden to demonstrate otherwise. *Id.*

■ Considering the actual text of Section 36(a) in light of *Sandoval,* the Court concludes that no private right of action was intended by Congress. The statute clearly identifies "[t]he Commission" as the party authorized to bring an action under Section 36(a). 15 U.S.C. § 80a–35(a). No other language in this section of the statute suggests that any other party may bring such an action. Although there were several courts that found implied

rights under the Investment Company Act prior to the Supreme Court's ruling in *Sandoval,*[17] the trend since *Sandoval* definitively demonstrates that the absence in the statute itself of an explicit right, particularly when a private right of action is afforded by another section of a statute,[18] precludes a finding of an implied private right. Moreover, although Plaintiffs cite to cases in which a private right of action may be implied, including some which inferred such a right under the Investment Company Act, most of the cases cited by Plaintiffs were decided prior to *Sandoval.*[19] *Sandoval* and the subsequent cases in which the issue has been considered suggest a distinct narrowing of the implied right of action. Because Plaintiffs have provided this Court with no compelling post-*Sandoval* judicial analysis to support finding that a private right of action under Section 36(a) was intended by Congress and should, therefore, be implied, Plaintiffs' allegations of a violation of Section 36(a) of the Investment Company Act will be dismissed.

## D. Section 36(b) of the Investment Company Act

Defendants next argue that the fourth count of the Complaint, in which Plaintiffs

17. Prior to *Sandoval,* courts applied a factor-based test set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which set forth several factors to be considered in ascertaining legislative intent to establish an implied private right of action. *Olmsted,* 283 F.3d at 434. These factors included "(1) whether the plaintiff is 'one of the class for whose *especial* benefit the statute was enacted,' (2) whether there is 'any indication of legislative intent, explicit or implicit,' to create or deny such a remedy, (3) whether the private cause of action would be 'consistent with the underlying purposes of the legislative scheme,' and (4) whether the cause of action is 'one traditionally relegated to state law'." *Id.* (emphasis in original) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).

18. While Section 36(a) confers standing explicitly on the Securities and Exchange Commission, Section 36(b) affords investors a private right of action. *See* 15 U.S.C. § 80a–35.

19. In the only post-*Sandoval* case Plaintiffs cite, *Strougo v. Bassini,* 282 F.3d 162 (2d Cir.2002), the court did not directly consider whether Section 36(a) gives rise to a private cause of action. Rather, the *Strougo* court considered whether federal or state law should apply to the case and whether the plaintiffs had standing, under the law of Maryland, to bring direct claims for breach of fiduciary duty against the directors of a closed-end investment company. *Strougo,* 282 F.3d at 169.

assert a violation of Section 36(b) of the Investment Company Act, should be dismissed for three reasons. Defendants first argue that Plaintiffs allege only general breaches of fiduciary duty that are unrelated to adviser compensation, and that these alleged actions are not governed by Section 36(b). Defendants next argue that Plaintiffs fail to state a claim under Section 36(b) because they seek to recover personally. Finally, Defendants argue that Plaintiffs cannot bring a claim pursuant to Section 36(b) against Gartmore Mutual Funds, Inc. because (1) such an entity does not exist, and (2) even if it did exist, the Complaint contains no allegation that Gartmore Mutual Funds, Inc., as parent to the Advisor Defendants received any advisory fees.

### 1. Relationship of Claims to Adviser Compensation

Defendants contend that because Plaintiffs allege only that Defendants breached a general fiduciary duty and do not allege that Defendants were paid excessive fees, their claim falls outside the purview of Section 36(b). Plaintiffs disagree, arguing that because the "systematic breaches of fiduciary duty" committed by Defendants should preclude the payment of any compensation from Plaintiffs, the Complaint sufficiently implicates an allegation that excessive fees were paid to the funds. The Court is not persuaded by Plaintiffs' argument.

Section 36(b) of the Investment Company Act was enacted "in large part because Congress recognized that as mutual funds grew larger, it became less expensive for investment advisers to provide the additional services." *Migdal v. Rowe Price–Fleming Int'l, Inc.*, 248 F.3d 321, 326–27 (4th Cir.2001). Thus, Section 36(b) imposes a fiduciary duty upon investment advisers to mutual funds "with respect to the receipt of compensation for services," and, at the same time, provides for a private cause of action by a mutual fund investor against the investment advisor for "breach of fiduciary duty *in respect of such compensation.*" 15 U.S.C. § 80a–35(b) (emphasis added);[20] *see also Migdal*, 248 F.3d at 326. The majority of courts interpreting Section 36(b) require that any action brought thereunder be limited to claims where a plaintiff alleges that an investment advisor received excessive compensation. *Migdal*, 248 F.3d at 329. A claim for breach of a general fiduciary duty, absent an actual allegation relating to excessive compensation, must be brought under either another section of the Investment Company Act or pursuant to state law. *Id.*

A compelling example of the narrow interpretation of Section 36(b) is provided in *Migdal.* In *Migdal*, the plaintiffs were shareholders in two mutual funds who alleged that certain investment advisers breached fiduciary duties imposed by Section 36(b) by receiving excessive fees and that the directors of each of the mutual funds were not disinterested. *Migdal*, 248 F.3d at 325. The defendants moved to dismiss the complaint, arguing that the allegations were too general and did not

---

**20.** Section 36(b) states that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person." 15 U.S.C.A. § 80a–35(b).

state facts that would support a finding that the relationship between the fees at issue and the services provided was disproportionate. *Id.* After examining the parameters established by Section 36(b) and its underlying statutory purpose, the *Migdal* court concluded that the plaintiffs' claims essentially alleged a general breach of fiduciary duty, and were therefore not appropriately brought pursuant to Section 36(b). In drawing this conclusion, the *Migdal* court reasoned that such an allegation would be more appropriately addressed under either some other section of the Investment Company Act or under state law. *Id.* at 329.

The *Migdal* reasoning was adopted by the Third Circuit Court of Appeals in *Krantz v. Prudential Investments Fund Mgt. LLC*, 305 F.3d 140, 143 (3d Cir.2002). In *Krantz*, the plaintiff asserted claims pursuant to Section 36(b), alleging generally that the investment advisers received excessive compensation in breach of their fiduciary duty with respect to compensation, because none of the members of the fund's board of directors was independent, as was required by Section 10(a) of the Investment Company Act. The defendants moved to dismiss the complaint, arguing that the plaintiffs' general allegations were insufficient to support their claim of excessive compensation. The *Krantz* court agreed, stating that it was adopting the rationale set forth in *Migdal,* and that absent any statements of fact "pertinent to [the] relationship between the fees charged and the services rendered by the

investment adviser," such a complaint would be properly dismissed. *Id.* at 143.

■ The Complaint now before this Court does not set forth allegations that are sufficient to support a claim for breach of fiduciary duty with respect to compensation for services provided by Defendants. The crux of Plaintiffs' allegations pursuant to Section 36(b) are that "upon information and belief, [Defendants] breached their fiduciary duty arising under Section 36(b) of the ICA by failing to submit Proof of Claim forms or to otherwise participate in settled securities class actions and thereby recover money rightfully belonging to the Fund investors and which would have been immediately allocated to the individual investors through the recalculation of the NAV." *Complaint* at ¶ 43. While pleadings based on "information and belief" of a plaintiff are generally permissible, *see Parnes v. Gateway 2000*, 122 F.3d 539 (8th Cir.1997), *Migdal* and *Krantz* make it clear that a plaintiff asserting a claim for breach of fiduciary duty with respect to excessive compensation require that a plaintiff provide specific information regarding the relationship between the fees and services provided. Although Plaintiffs argue that other courts have interpreted Section 36(b) somewhat more broadly,[21] precedent within the Third Circuit states that more specificity than an attenuated implication is required in order for a claim to be brought pursuant to Section 36(b). Because Plaintiffs do not allege that the lack of recovery of settle-

---

**21.** Plaintiffs specifically note that in *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 812 (2d Cir.1976), the court permitted a claim pursuant to Section 36(b) alleging a breach of fiduciary duty by an investment adviser respecting an alleged failure to disclose fully information about a "patently one-sided revision" of an advisory contract to the fund's board of directors. Plaintiffs argue that behaviors by an investment advisor that are

deemed to be improper may be actionable pursuant to Section 36(b). However, Plaintiffs ignore the fact that in *Galfand,* the lack of full disclosure was directly related to an advisory contract affecting the payment of compensation to the adviser and did, therefore, relate to the compensation the adviser was provided. In fact, the *Migdal* court made note of this distinction. *Migdal*, 248 F.3d at 329 n. 2.

ment payments amounted to excessive compensation with respect to the services provided by Defendants, the fourth count of the Complaint shall be dismissed.[22]

### E. Section 47(b) of the Investment Company Act

In the fifth count of the Complaint, Plaintiffs allege that the agreements between the parent company and other affiliates and the funds were performed in violation of the Investment Company Act and that, therefore, the advisory agreements may be rescinded and all fees returned to the funds and the investors therein. *Complaint* at ¶¶ 46–48. Defendants argue that this count should be dismissed for three reasons. First, Defendants argue that Plaintiffs lack standing to file a claim under Section 47(b) of the Investment Company Act. Defendants next argue that Plaintiffs have not sufficiently alleged an underlying violation of the Investment Company Act, as required by Section 47(b). Defendant finally argue that Plaintiffs have not alleged that the advisory contracts, as they are drafted or performed, violate the Investment Company Act.

Section 47(b) of the Investment Company Act provides that any "contract that is made, or whose performance involves a violation of [the Act] ... is unenforceable *by either party* (or by a nonparty to the contract who acquired a right under the contract with knowledge of the facts by reason of which the making or performance violated or would violate any provision of this subchapter or of any rule, regulation or order thereunder) unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement...." 15

U.S.C. § 80a–46(b). Defendants argue that because Plaintiffs were not a party to the advisory contract, they lack standing to bring a claim pursuant to Section 47(b). In response, Plaintiffs argue that because Section 47(b) "provides a remedy rather than a distinct cause of action or basis for liability," there is no need for them to show independent standing to pursue a claim under the section. *Plaintiffs' Memorandum in Opposition to Gartmore Defendants' Motion to Dismiss* at 15.

The plain language of Section 47(b) states that once a violation of the Investment Company Act is established, rescission is an available remedy for *a party* to the contract. In order to assert the remedy set forth in Section 47(b), an individual shareholder who is not a party to an advisory contract must have brought a derivative claim on behalf of the fund. *See, e.g., Lessler v. Little*, 857 F.2d 866, 874 (1st Cir.1988) (affirming dismissal of Section 47(b) claim where party seeking such remedy was not a party to contract for advisory services, where plaintiff had proceeded solely on his own behalf as shareholder and did not assert a derivative action on behalf of the fund). Because Plaintiffs are not, as individuals, a party to the advisory contracts and because they did not bring the present claim as a derivative action, they do not have standing to pursue this claim.

Moreover, to the extent Plaintiffs' other Investment Company Act claims fail, their Section 47(b) claim must necessarily fail because a violation of the Act is a predicate to the remedy provided therein. A plaintiff asserting a claim under the Investment Company Act may seek relief under Section 47 only after a violation of

---

**22.** Because the Court concludes that Plaintiffs have not stated a claim for which relief can be granted pursuant to Section 36(b), Defendants' remaining arguments with respect to this count need not be addressed.

some other section of the Act has been established. *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F.Supp. 429, 438 (D.Conn.1983). Thus, if Plaintiffs' claims with respect to Sections 36(a) and 36(b) of the Act are dismissed, there is no basis upon which the remedy afforded by Section 47(b) can be awarded. Because these claims have been dismissed, this count of the Complaint cannot stand.

Finally, even if Defendants were found to have breached a general fiduciary duty, the remedy afforded by Section 47(b) would not apply. The Court of Appeals for the Third Circuit has not addressed the applicability of Section 47(b) of the Investment Company Act. However, courts construing a substantively similar provision of the Securities Exchange Act[23] have drawn a distinction between violations that are "collateral or tangential" to the contract sought to be rescinded and that those violations that are "inseparable from the performance of the contract," finding rescission inappropriate in the former case and appropriate in the latter. *See GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 202 (3d Cir.2001), *cert. denied*, 536 U.S. 923, 122 S.Ct. 2588, 153 L.Ed.2d 778 (2002).[24] The Court concludes that any alleged breach of fiduciary duty with respect to the failure to collect settlement payments is too attenuated from the advisory contracts to warrant rescission under Section 47(b).

Thus, in this case, Section 47(b) should not be applied to rescind the advisor agreements between the Funds and their investment advisors. The remedy afforded by Section 47(b) must be "fashioned to comport with, and further the policies of, the overall legislative scheme" of the Investment Company Act. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977). In turn, the overarching policy underlying the Investment Company Act is one of concern over self-dealing between the officers and directors of a mutual fund and its associated investment company. *Mathers Fund*, 564 F.2d at 783; *see also Lessler v. Little*, 857 F.2d 866, 870 (1st Cir.1988) (noting that Investment Company Act was designed to "carefully control" the relationship between investment advisers and investment companies"); *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 808–09 (2d Cir.1976) (noting vulnerability of mutual fund shareholders to "unscrupulous advisers"). In this case, Plaintiffs do not allege that the actions of Defendants, or

---

**23.** Section 29(b) of the Securities Exchange Act states that "[e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, . . . [or] the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void." 15 U.S.C. § 78cc(b). In comparison, Section 47(b) of the Investment Company Act states that "[a] contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation or order thereunder, is unenforceable by either party . . . ." 15 U.S.C. § 80a–46.

**24.** In *GFL Advantage Fund*, the plaintiff was a lender seeking to enforce promissory notes signed by the defendant as security for loans extended to the defendant's closely held medical services companies. *GFL Advantage Fund*, 272 F.3d at 194. In its answer to the complaint, the defendant argued that the notes were rendered unenforceable by Section 29 of the Securities Exchange Act because the plaintiff had violated the Securities Exchange Act by facilitating concentrated short sales of stock in the companies, thereby engaging in a scheme of securities fraud and market manipulation. *Id.* at 197. In declining to order rescission of the notes on this basis, the *GFL* court reasoned that the allegedly illegal short sale transactions were independent of the parties' respective obligations under the notes, and that as a result, the illegality was too attenuated from the valid and lawful contracts to allow for rescission. *Id.* at 202.

their inaction, stemmed from self-interest, self-dealing or a less than arms-length transactions. Rather, Plaintiffs assert that Defendants carelessly or negligently[25] failed to seek compensation from settlement of certain securities class action suits. This failure is not inextricably linked to the advisor agreements between the Fund and its advisors, nor does the failure arise from the self-interest of the advisers. Because the allegations in the Complaint do not assert claims for which the Investment Company Act was designed to remedy, Section 47(b) does not provide an appropriate remedy and, for all of the reasons discussed, this count of the Complaint will be dismissed.

## CONCLUSION

For the reasons discussed above, none of the alleged claims stated in the Complaint are cognizable claims and will, therefore, be dismissed. An appropriate Order follows.

### *ORDER*

**AND NOW**, this 15th day of October, 2005, upon consideration of the Motion to Dismiss the Complaint filed by Barbara L. Hennigar, Thomas J. Kerr, IV, Douglas F. Kridler, David C. Wetmore, Paul J. Hondros, Arden L. Shisler, Gerald J. Holland, Eric E. Miller, Gartmore Mutual Funds, Inc., Gartmore Mutual Fund Capital Trust, NorthPointe Capital LLC, Gartmore Separate Accounts LLC, Gartmore Global Partners, Charles E. Allen, Paula H.J. Cholmondeley, C. Brent DeVoe and Robert M. Duncan (Docket No. 9), the Motion to Dismiss filed by Fund Asset Management, L.P. (Docket No. 12), the responses thereto (Docket Nos. 20, 29), the reply and various submissions of supplemental authority filed by all parties (Docket Nos. 27, 28, 32, 33, 40, 41) and after oral argument on the Motions, it is **ORDERED** that the Motions are **GRANTED** and that all claims against all Defendants are hereby dismissed.

25. In fact, the second count of the Complaint is a claim for negligence under state law.